**Affirmed as Modified and Opinion Filed June 3, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00377-CV

### CRE8 INTERNATIONAL, LLC, Appellant
### V.
### ELEXIS RICE, Appellee

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC 10-15253**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

Appellee Elexis Rice obtained a money judgment against Gary Pilant and filed a motion

for a turnover order. Appellant Cre8 International, Inc., which had not previously been a party to

the suit, filed a petition in intervention opposing Rice's motion. The trial court signed a turnover

order, and Cre8 perfected this appeal. For the following reasons, we modify the trial court's

order and affirm as modified.

### I.   BACKGROUND

Rice sued 3G Global, LLC for nonpayment of a debt and Gary Pilant as guarantor of that

debt. The trial judge severed the claim against Pilant and signed an agreed final judgment

awarding Rice $250,000 against him.

Rice later filed a motion for a turnover order, which sought an order compelling Pilant to turn over the internet domain names and registrations for seven different websites, each containing the characters "cre8stone." She also sought the turnover of "Cre8stone.com email addresses" and a specific telephone number. Pilant did not respond. The turnover motion was set for hearing.

On the morning of that hearing, Cre8 filed a petition in intervention praying for denial of Rice's turnover order. Cre8's counsel also appeared at and participated in the hearing. Three witnesses testified: Pilant, his son Gary V. Pilant II, and Rice's attorney. After the hearing, the trial judge signed an order (1) directing the immediate issuance of a writ of execution, (2) directing a sheriff or constable to endorse the levy on the writ, and (3) ordering the domain names, telephone number, and email addresses to be auctioned off in satisfaction of the judgment.

Cre8 timely filed a motion for new trial and a notice of appeal. In four issues, Cre8 argues (1) the trial court erred by deciding the parties' substantive property rights, (2) the turnover order does not comply with the statute, (3) the trial court erred by issuing the turnover order against Cre8 because Cre8 is a non-party and non-judgment debtor, and (4) the trial court erred by ordering turnover of assets not owned by the judgment debtor.

## II. ANALYSIS

### A. Standard of review

We review a turnover order for abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Stanley v. Reef Secs., Inc.*, 314 S.W.3d 659, 663 (Tex. App.—Dallas 2010, no pet.). Accordingly, we affirm unless the trial court acted in an arbitrary or unreasonable manner. *Beaumont Bank*, 806 S.W.2d at 226. The sufficiency of the evidence to support the order is relevant to determining whether the trial court abused its discretion. *Id*. If a

–2–

turnover order is sustainable for any reason, we will not reverse the order even if it is predicated on an erroneous conclusion of law. *Id.*

## B. Issue 1: Did the trial court abuse its discretion procedurally by deciding substantive property rights of the parties?

Cre8's first appellate issue argues that the trial court abused its discretion by deciding the parties' substantive property rights in the assets in question. According to Cre8, the trial court may not use a turnover proceeding to adjudicate the ownership of property when a third party claims an interest in the property sought by a judgment creditor. Although Cre8 did not assert this argument in its plea in intervention, its attorney did argue near the beginning of the hearing that a turnover proceeding is a "procedural matter" and "is not the forum by which ownership of an asset is determined." And after evidence was taken, Cre8 argued again that "the law doesn't allow the Court to determine ownership in this sort of procedure." We conclude Cre8 preserved its argument for appeal. *See* TEX. R. APP. P. 33.1(a).

A turnover order is a procedural device that allows a judgment creditor to reach a judgment debtor's assets that are otherwise difficult to levy on or attach. *See Beaumont Bank*, 806 S.W.2d at 224. Civil Practice and Remedies Code § 31.002 authorizes turnover orders as follows:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:
>
> > (1) cannot readily be attached or levied on by ordinary legal process; and
> >
> > (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
> > (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

–3–

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a)–(b) (West 2015). The statute's purpose is to put a reasonable remedy in the hands of a diligent judgment creditor, subject to court supervision. *Associated Ready Mix, Inc. v. Douglas*, 843 S.W.2d 758, 763 (Tex. App.—Waco 1992, orig. proceeding).

Thus, property may be subject to turnover if (1) it is in the debtor's possession or subject to his control, (2) it cannot be readily attached or levied on by ordinary legal process, and (3) it is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. *See* CIV. PRAC. § 31.002(a)–(b). The judgment creditor bears the burden of showing that the judgment debtor owns, possesses, or controls the property. *See id.*; *HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.—Dallas 2012, no pet.). The judgment debtor must then show that the property is exempt from attachment. *Europa Int'l, Ltd. v. Direct Access Trader Corp.*, 315 S.W.3d 654, 656 (Tex. App.—Dallas 2010, no pet.).

A trial court considering a turnover motion has discretion to determine whether property meets the statutory requirements. *See Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321, 325 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("The trial court . . . is permitted to determine what property meets those statutory requirements."); *see also Beaumont Bank*, 806 S.W.2d at 227 ("The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control."); *Stanley*, 314 S.W.3d at 667 n.4 ("Texas intermediate appellate courts have concluded that whether property is exempt from execution is properly decided in a turnover proceeding."). For example, in one recent case the trial court was asked to determine whether a judgment debtor owned, possessed, or controlled

a $15,000 retainer that had been paid to his attorney. *In re C.H.C.*, 290 S.W.3d 929, 930 (Tex. App.—Dallas 2009, no pet.). The trial court concluded that the debtor had no ownership or control of the funds, and we affirmed because there was competent evidence to support the trial court's ruling. *Id.* at 933.

On the other hand, as Cre8 states, turnover proceedings ordinarily may not be used to determine third parties' substantive rights. *See In re Karlseng*, No. 05-14-00049-CV, 2014 WL 1018321, at *3 (Tex. App.—Dallas Feb. 12, 2014, orig. proceeding) (mem. op.); *see also Beaumont Bank*, 806 S.W.2d at 227 ("Texas courts do not apply the turnover statute to non-judgment debtors."). Thus, our sister court has said that "[a]ny findings made by the trial court to facilitate the issuance of the turnover order will bind the judgment debtors only, and not third parties that the turnover order has not issued against." *Bay City Plastics*, 106 S.W.3d at 325.

Here, the disputed assets are intangible and cannot readily be attached or levied on by ordinary legal process, and the trial court found that the debtor "owns and/or controls right, title and interest to" the assets in question. That finding ordinarily would not bind non-debtor Cre8, but Cre8 voluntarily injected itself into the proceedings by intervening in the turnover proceeding, appearing at the turnover hearing, introducing evidence regarding its ownership of the telephone number, and arguing the issue in the trial court. Indeed, Cre8's appellate brief states:

> At the hearing on December 30, 2013, **Cre8 International asserted its claim to the property rights of the property**, identified as the domain name, registration, telephone number and email address for Cre8stone, sought in the second motion for turnover order. . . . The ownership of the property identified in the turnover order was debated and much of [the] subject of the December 30, 201[3] hearing.

(Emphasis added.)

Furthermore, regardless of whether Cre8 intervened, Rice had to prove that the debtor (Pilant) owned and controlled the assets to get any relief. Cre8 could have sat on the sidelines

and later attacked the sale by proving superior rights had Rice won, but it chose to forgo that step and to inject itself into the matter. Cre8 having done so cannot now complain that the trial court ruled against it on the ownership issue. *See In re C.H.C.*, 396 S.W.3d 33, 43 (Tex. App.—Dallas 2013, no pet.) ("Waiver is the intentional relinquishment of a right actually or constructively known, or intentional conduct inconsistent with claiming that right.").

We thus conclude that the trial court did not abuse its discretion by deciding, over Cre8's objection, whether the debtor "owns and/or controls right, title and interest to" the assets in question. (Nor, as discussed below, did it abuse its discretion in finding that the debtor factually owned and controlled those assets.) Accordingly we reject Cre8's first issue.

**C.     Issue 2:  Did the trial court abuse its discretion by "signing a turnover order that does not comply with the turnover statute"?**

Cre8's second issue argues that the turnover order fatally does not comply with the turnover statute because it does not (i) require affirmative action by the debtor (Pilant); (ii) order anything to be collected or turned over, or (iii) appoint a receiver. *See* CIV. PRAC. § 31.002(b)(1)–(3).

This issue raises statutory construction principles. When we construe a statute, we strive to ascertain and effectuate the legislature's intent. *TIC N. Cent. Dallas 3, L.L.C. v. Envirobusiness, Inc.*, No. 05-13-01021-CV, 2014 WL 4724706, at *3 (Tex. App.—Dallas Sept. 24, 2014, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.023(1) (West 2013) (when construing a statute, courts may consider the "object sought to be attained"). We take the plain meaning of the text as the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning yields absurd or nonsensical results. *TIC*, 2014 WL 4724706, at *3. We read a statute as a whole and do not construe its provisions in isolation. *Id*. Thus, we endeavor to read the statute contextually and give effect to every word, clause, and sentence. *Id*.

–6–

Based on those principles, we for several reasons reject Cre8's premise that the turnover statute applies that narrowly to this case. First, § 31.002(a) provides that a judgment debtor is entitled to aid from a court "through injunction *or other means*." *Id*. § 31.002(a) (emphasis added). Second, § 31.002(b)(2) similarly authorizes the trial court to "otherwise apply the property to the satisfaction of the judgment." *Id*. § 31.002(b)(2). Finally, § 32.002(b)(2)'s list of options begins with "The court may" use the listed remedies, indicating that it is a permissive list.

The statute thus expressly gives the trial court powers beyond just mandatory injunctions (or appointing receivers) to achieve the statutory purpose of aiding judgment creditors in reaching hard to get assets to satisfy their judgments. Here, the trial court *ordered* the sheriff to (i) obtain a writ of execution listing the intangible assets at issue (which the clerk had a ministerial duty to issue) and (ii) then sell those assets at a sheriff's sale. This remedy, which has elements of both injunctive relief and a receivership, is a reasonable and narrowly tailored remedy that aids this judgment debtor in realizing on these intangible assets that could not be readily reached by ordinary execution or attachment because there is nothing physical for the sheriff to seize.

For these reasons, we conclude that the trial court did not abuse its discretion in ordering this specific relief in this case and disagree with Cre8's second issue.

**D.    Issue 3: Did the trial court abuse its discretion by "issuing a turnover order against a nonparty who is not the judgment debtor"?**

Similar to its Issue 1 arguments, Cre8's third issue cites numerous cases for the premise that the trial court abused its discretion by ordering the "turnover of property in possession of and subject to the control of Cre8 International, LLC, a third party non-judgment debtor" because the "plain language of the statute only permits a turnover order to issue against the judgment debtor, and only to secure property owned by the judgment debtor." Cre8's cases are

–7–

all factually distinguishable because Cre8 voluntarily intervened in the turnover proceeding and actively litigated the matter and lost.

Likewise, Cre8's argument that the creditor (Rice) needed to file a separate case to litigate Cre8's alleged rights in these assets lacks merit because Cre8 obviated the need for a separate proceeding by itself joining the issue in the turnover proceeding.

Moreover, to the extent that Cre8 argues that the turnover order was an abuse of discretion because it is "issued against" a non-debtor, that argument lacks merit for the above stated reasons and because the order does not mention Cre8.

As with Issue 1, we conclude that the trial court did not abuse its discretion in this case and disagree with Cre8's third issue.

**E.  Issue 4:  Did the trial court abuse its discretion by "issuing a turnover order which allowed for the sale of assets not owned by the judgment debtor"?**

### 1.  Applicable Standards

Cre8's fourth issue argues that the "trial court abused its discretion in issuing the turnover order ordering the sale of Cre8 International, LLC property because there was no evidence that judgment debtor Gary V. Pilant owned any property right in those assets."  A trial court does not abuse its discretion if there is some substantive and probative evidence to support its decision.  *In re C.H.C.*, 290 S.W.3d at 931.

In a turnover proceeding, the judgment creditor bears the burden of tracing the assets to the judgment debtor.  *Id.*  Once assets are traced to a judgment debtor, a presumption arises that the assets remain in his possession, and the burden shifts to the debtor to account for the assets.  *See Beaumont Bank*, 806 S.W.2d at 226.

### 2.  Website Domain Names

There is some evidence that Pilant owned or controlled the website domain names. Several pages of documents were admitted during the turnover hearing as plaintiff's exhibit 2.

These documents, which appear to be printouts of webpages, list "Gary Pilant" as the "Registrant," "Admin," and "Tech" for each domain name. The documents also list addresses and telephone numbers for "Gary Pilant" that Pilant admitted were his. This was some evidence from which the trial court reasonably could have found that Pilant owned the domain names.

Although Pilant also testified that one of the domain names, cre8stone.com, is owned by Cre8, the trial court was not bound to believe his testimony. *See Strong v. Strong*, 350 S.W.3d 759, 770 n.6 (Tex. App.—Dallas 2011, pet. denied) ("The trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony."). The trial court did not abuse its discretion by ordering turnover of the domain names.

### 3. Email Addresses

The order also requires the sale of "Cre8stone.com email addresses." Neither side directs us to any evidence of ownership, possession, or control of Cre8stone email addresses. We see no evidence that Cre8 owns or has any interest in any email addresses affected by the turnover order. An appellant may not complain of errors that do not injure it or that merely affect the rights of others. *See Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999) (per curiam).

### 4. Telephone Number

The turnover order requires the sale of a specific telephone number. Our record review reveals no evidence that Pilant owned, possessed, or controlled that telephone number. The record contains evidence that Cre8 has some right or interest in that telephone number, so Cre8 has standing to complain about this aspect of the turnover order. Because there is no evidence that Pilant owned, possessed, or controlled the telephone number, the trial court abused its discretion by ordering the sale of that telephone number. *See Stanley*, 314 S.W.3d at 669 (trial

court abused its discretion by ordering judgment debtor to turn over property in the absence of any evidence that the debtor owned the property).

We resolve Cre8's fourth issue in its favor as to the telephone number only.

### III. DISPOSITION

We modify the trial court's turnover order to delete the provision ordering the sale of the telephone number.  We affirm the trial court's order as modified.

140377F.P05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRE8 INTERNATIONAL, LLC, Appellant

No. 05-14-00377-CV      V.

ELEXIS RICE, Appellee

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC 10-15253.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, the trial court's Turnover Order is **MODIFIED** as follows:

On page two of the Order, the subparagraph numbered (2) is modified to state:

(2)      **Property:** Cre8stone.com email addresses.
         **Location:** Telecommunications provider, AT&T.

As modified, the trial court's Turnover Order is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered June 3, 2015.